IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BILLY GRAY SATTERFIELD,        )
                               )
            Petitioner,        )
                               )
      v.                       )    1:10CV836
                               )
HAYNES, SUP'T.,                )
                               )
            Respondent.        )

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On May 14, 2008, in the Superior Court of Forsyth County, Petitioner pled guilty to eight counts of trafficking opium (OxyContin) and two counts of possession with intent to sell or deliver opium (OxyContin) in cases 07 CRS 60987, -60993, and 08 CRS 8913-14. (Docket Entry 6, Exs. 1, 3.) Pursuant to the terms of his plea bargain, all ten counts were consolidated into a single judgment on one count of trafficking opium and Petitioner received the mandatory minimum sentence of 70 to 84 months of imprisonment. (Id.) Petitioner did not file a direct appeal. (Docket Entry 1 at 2.)

On the portion of his Petition regarding his state court filings (other than any direct appeal), Petitioner identified March 31, 2009, and August 26, 2009, as dates of filings as to a Motion for Appropriate Relief challenging his foregoing conviction and sentence. (Id.) According to Petitioner's Inmate Mail Report, on March 31, 2009, Petitioner did send legal mail to the District

Attorney in Winston-Salem, North Carolina, and to the Resident Superior Court Judge of Forsyth County. (Docket Entry 1 at 58-59.) On July 9, 2009, he sent an inquiry to the Forsyth County Clerk's Office concerning the status of his motion for appropriate relief and, on July 22, 2009, said office responded that its records failed to reflect any such filing. (Id. at 57.)

On August 26, 2009, Petitioner filed a motion for appropriate relief dated March 26, 2009, in the Forsyth County Clerk's Office, which the court denied. (Docket Entry 6, Exs. 7, 8.) Petitioner then sought a writ of certiorari from the North Carolina Court of Appeals, which denied that request on July 20, 2010. (Id., Ex. 11.) He also sought certiorari from the North Carolina Supreme Court, but that petition was dismissed on October 7, 2010. (Id., Ex. 13.)

Petitioner thereafter mailed his undated Petition to this Court. (See Docket Entry 1 at 14.) The envelope reflects a postmark of November 1, 2010, and the Court received the Petition on November 2, 2010. (See Docket Entry 1 at 1; Docket Entry 1-1.) Respondent has now moved for summary judgment (Docket Entry 5), Petitioner has filed a response (Docket Entry 9), and Respondent's motion comes before the Court for a decision.

### **Petitioner's Claims**

Petitioner has raised the following four claims for relief in his Petition:

1) He was subjected to double jeopardy at sentencing because he was sentenced for "multiple counts arising out of a single

-2-

course of conduct" (Docket Entry 1, § 12, Ground One Supporting Facts);

2) Petitioner received ineffective assistance of counsel because he "had a defense strategy of entrapment, [but] counsel failed to investigate and . . . failed to enter a timely motion" (id., Ground Two Supporting Facts);

3) "The trial court lacked jurisdiction to accept [Petitioner's] plea" because the indictments were defective in that they did not "list the dosage units of the drug sold" and did not "list the amount of money alleged to have changed hands" (id., Ground Three and Supporting Facts); and

4) The guilty plea was improper in that "[t]he trial judge did not ensure that [Petitioner's] plea was voluntarily or intelligently entered and further failed to establish a sufficient factual basis for the acceptance of [his] plea." (Id., Ground Four Supporting Facts.) The Petition adds that it also "does not appear affirmatively in the record that [his] plea was voluntarily and understandingly entered." (Id.)

## Discussion

Although Respondent has alternatively briefed the claims in the Petition on their merits, he first requests dismissal on the ground that the Petition was filed[1] beyond the one-year limitation

---

[1] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254
(continued...)

period imposed by 28 U.S.C. § 2244(d)(1).  In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced.  In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[1](...continued)
or § 2255."  <u>Id.</u> at 110-11 & n.3.  In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context.  <u>See</u> <u>Allen v. Mitchell</u>, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date).  <u>Cf.</u> <u>United States v. Torres</u>, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court).  We take no position on that question here."); <u>but see</u> <u>Smith v. Woodard</u>, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that <u>Houston</u>'s rule governed filing date of § 2254 petition); <u>Ostrander v. Angelone</u>, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same).  Petitioner did not date his Petition.  (Docket Entry 1 at 14.)  Nor, in his response brief, did he identify the date he gave his Petition to prison officials for mailing.  (Docket Entry 9 at 1-6.)  Accordingly, the earliest date in the record the Court could use as the date of "filing" is the post-mark date of November 1, 2010.  (<u>See</u> Docket Entry 1-1.)

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Here, judgment was entered on May 14, 2008. (Docket Entry 6, Ex. 3.) Because Petitioner pled guilty and received the only sentence available under N.C. Gen. Stat. § 90-95(h)(4), he did not have a right to a direct appeal under North Carolina law. See State v. Hamby, 129 N.C. App. 366, 499 S.E.2d 195 (1998). As a result, Petitioner's time to file a habeas petition in this Court began to run on the day judgment was entered. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[2] It then ran for 365

---

[2] The Petition states that the 90-day period for filing a petition for certiorari with the United States Supreme Court should be added to the date of judgment. (Docket Entry 1 at 13.) In order to seek review from the United States Supreme Court, Petitioner would have had to take his case to the "state court of last resort." S.Ct. R. 13.1. In this instance, Petitioner would have had to bring his case to the North Carolina appellate courts through a petition for a writ of certiorari. N.C. Gen. Stat. § 15A-1444. In the absence of such action, Petitioner had no right to seek review in the United States Supreme Court and thus no basis to claim an entitlement to the addition of 90 days to the date (continued...)

days until it expired a year later on May 14, 2009, without Petitioner having successfully made any filing in any court.

Petitioner claims in Section 18 of his Petition that he filed his motion for appropriate relief "on or about March 26th, 2009." (Docket Entry 1 at 13.) This date appears on the motion for appropriate relief the state court described as filed on August 26, 2009. (Docket Entry 6, Exs. 7, 8.) If Petitioner is correct, the running of his time to file was tolled as of March 26, 2009, for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).

Petitioner, however, has not shown that he utilized the correct method for filing pleadings in North Carolina. N.C.R. Civ. P. 5(e)(1) (requiring filing of documents with clerk of court unless judge accepts filing directly by noting filing date and transmitting documents to clerk's office). To the contrary, the record reflects that Petitioner mailed legal documents only to a judge and the district attorney and lacks any evidence that a judge accepted said documents for filing by transmitting them to the clerk's office after noting the filing date. (Docket Entry 1 at 57-59.) Indeed, the documentation from the clerk's office confirms that no judge took any such action. (See id. at 57.)

---

[2](...continued)
of entry of judgment.

As a result, no filing occurred until August 26, 2009, when Petitioner sent his motion for appropriate relief to the clerk's office. (See id. at 2; Docket Entry 6, Exs. 7, 8.) Improper attempted filings do not toll the limitation period. Artuz v. Bennett, 531 U.S. 4, 8 (2000)(describing "properly filed" document as one submitted in accordance with state rules concerning form of document, time limits, and proper court and office for filing). As previously explained, August 26, 2009, fell after the time to file in this Court had already expired. That filing could not revive or restart the federal limitations period. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). The Petition is untimely under § 2244(d)(1)(A).

Petitioner's response brief does not clearly address the timeliness of his Petition. (See Docket Entry 9.) Instead, it states that Petitioner is a layman at law, that a prison case worker and another inmate told him his sentence was too high for his crimes, that North Carolina Prisoner Legal Services (NCPLS) waited about seven months to inform him that it would not represent him, and that he had difficulties doing his own legal work because prison authorities declared a criminal law and procedure book sent to him by his mother to be contraband. (See id. at 1-2.) The brief then makes statements and arguments and asks questions concerning the merits of his case. (Id. at 3-6.)

None of the statements by Petitioner changes the conclusion set out above that his Petition is untimely under § 2444(d)(1). However, at least some of the arguments could be generously

-7-

construed as a request for equitable tolling by a pro se prisoner. The United States Supreme Court has determined that the one-year limitation period is subject to equitable tolling. <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." <u>Id.</u> (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). Unfamiliarity with the legal process and lack of representation do not constitute grounds for equitable tolling. <u>United States v. Sosa</u>, 364 F.3d 507, 512 (4th Cir. 2004). Likewise, "garden variety" negligence by counsel does not provide a basis for equitable tolling. <u>Holland</u>, 130 S.Ct. at 2564.

Petitioner's equitable tolling arguments about lack of legal knowledge and representation constitute ordinary, not extraordinary, circumstances for prisoners and, thus fail to provide grounds for equitable tolling. <u>See</u> <u>Sosa</u>, 364 F.3d at 512. Petitioner's claim that NCPLS was not diligent in informing him of its declination of representation similarly fails to warrant equitable tolling. <u>Hood v. Jackson</u>, No. 5:10-HC2008-FL, 2010 WL 4974550 (E.D.N.C. Dec. 1, 2010) (unpublished) (citing cases); <u>Dockery v. Beck</u>, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002)(Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished).

Nor does Petitioner's contention that prison authorities confiscated a law book his mother attempted to send him support

-8-

equitable tolling. Petitioner attached to his response brief prison grievance forms addressing this issue. (See Docket Entry 9 at 12-14.) These forms show that prison officials did not treat the book as contraband, but rather that a problem arose because the book had a CD or DVD attached to it; the prison's policy prohibited Petitioner's possession of the CD/DVD and did not allow mail room staff to remove the CD/DVD from the book. (See id.) Prison officials informed Petitioner of this circumstance and gave him a chance to have the book sent home so that his mother could remove the CD/DVD and return the book to him. (See id.) However, Petitioner declined this option and refused to sign appropriate forms. (See id.) Because Petitioner, not prison officials, ultimately deprived himself of the book by refusing to follow proper procedures, he is not entitled to equitable tolling.

The remainder of Petitioner's response brief addresses the merits of his case and thus does not support a finding of grounds for equitable tolling. Respondent's Motion for Summary Judgment should be granted based on Petitioner's failure to comply with the statute of limitations.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be **GRANTED**, that the Habeas Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

                                                   /s/ L. Patrick Auld
                                                    **L. Patrick Auld**
                                    **United States Magistrate Judge**
September 9, 2011